**In the United States District Court
for the Northern District of Illinois
Eastern Division**

| | |
|---|---|
| Kuiper Ventures LLC, | |
| Plaintiff, | Case No. 25-cv-14422 |
| v. | JURY TRIAL DEMANDED |
| The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A, | Dist. Judge Robert W. Gettleman |
| | Mag. Judge Jeannice W. Appenteng |
| Defendants | |

**EX PARTE MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Kuiper Ventures LLC, by

Jonathan L.A. Phillips (IL6302752)
**Phillips & Bathke, P.C.**
300 Northeast Perry Avenue
Peoria, Illinois 61603
(309) 834-2296
jlap@pb-iplaw.com

**Table of Contents**

I. Introduction ................................................................................................ 1

II. Statement of Facts ..................................................................................... 2

   A. Plaintiff's Rights ................................................................................. 2

   B. Defendants' Infringement .................................................................. 2

III. Argument .................................................................................................. 3

   A. Applicable Legal Standards ............................................................... 3

      1. Lanham Act Standards ................................................................. 3

      2. Standards on Remaining Factors ................................................. 4

   B. This Court has Personal Jurisdiction over the Defendants ................. 4

   C. Plaintiff Is Likely to Succeed on the Merits ........................................ 5

   D. Plaintiff Will Suffer Immediate and Irreparable Harm Without Injunctive Relief ........................................................................................ 6

   E. An Asset Restraint Is Necessary to Prevent Irreparable Harm and Preserve This Court's Ability to Provide Relief ......................................... 7

   F. The Balance of Harms Favors Plaintiff ............................................... 8

   G. A TRO Will Not Harm the Public ....................................................... 9

   H. The Ex Parte Relief Is Necessary ........................................................ 9

   I. Plaintiff is Entitled to Expedited Discovery ........................................ 9

   J. A Bond Should Be Set at $3,000 to Secure the Injunctive Relief ..... 10

IV. Conclusion ............................................................................................... 10

I.     Introduction

Defendants' infringement forces Plaintiff to seek injunctive relief on an ex parte basis to stop infringement, prevent fraudulent transfer of assets, and to allow for limited early discovery to advance the case. Despite Plaintiff's efforts to have the platform, Amazon, remove the infringing products, it was required to file this, and other, suits.

The Defendants named in Schedule A are Chinese entities infringing Plaintiff's trademark through online sales on Temu. They advertise, offer, and sell products, shipped into Illinois, that violate Plaintiff's registered trademark. Operating under the aliases listed in Schedule A, they target Illinois consumers through their ecommerce operations.

Online anonymity and international borders allow the Defendants to avoid accountability. By either shipping inventory into the United States in advance, distributing through third-party marketplaces, or drop-shipping, they frustrate enforcement efforts.

This lawsuit seeks to stop the rampant infringement. The requested injunctive relief stops the infringement until a preliminary injunction can be sought. The temporary restraining order sought preserves the Court's ability to render meaningful relief. Without the TRO, Plaintiff will suffer irreparable harm. Otherwise the motion seeks early discovery necessary to advance the case.

Without the relief sought in this motion, as courts in this District often agree, Defendants are likely to stop operating under one set of aliases and appear under another while, simultaneously, moving assets to offshore bank accounts. *See, Square One Entm't Inc. v. P'ships & Unincorporated Ass'n Identified in Schedule "A",* No. 20 C 5685, 2021 U.S. Dist. LEXIS 65710, at *2 (N.D. Ill. Apr. 5, 2021).

Plaintiff respectfully requests that the Court issue an ex parte temporary restraining order to halt Defendants' ongoing unlawful conduct, effectuate an asset freeze, and to allow for early, limited discovery.

## II. Statement of Facts

### A. Plaintiff's Rights

Plaintiff, Kuiper Ventures LLC, is a Wyoming limited liability company that owns, *inter alia*, two registered trademarks. Here, relevant registrations for their travel blanket products are a registration for EVERSNUG and one for [logo] (the "LOGO MARK") with U.S. registration numbers 6,129,426 and 9,7049,699. (Docs. 5-1, 5-2). The registrations are also attached as Exhibits 1 and 2.

### B. Defendants' Infringement

Plaintiff's EVERSNUG Mark and LOGO MARK protect consumers from confusion through their application to products like those offered by Plaintiff and the Defendants. These marks embody the goodwill developed by Plaintiff as a provider of its travel blanket pouch products. But some competitors have used confusingly similar marks, or exactly the same mark, as EVERSNUG and [logo] to brand exactly the same goods. Exhibit 2, ¶¶ 15, 30, 31, 35, 36, 37, 41, 42, 43, 47, 48, and 49.

Recently, Plaintiff uncovered numerous infringing storefronts on Amazon, Temu, and other platforms. The Defendants on Schedule A to the Verified Complaint, Doc. 6, operate these stores on Temu and target consumers in this District. Exhibit 3, ¶¶ 15, 30, 31, 35, 36, 37, 41, 42, 43, 47, 48, and 49. They offer for sale and sell infringing products on third-party ecommerce platforms. The Defendants use similar store layouts, copy,

2

identical or nearly identical product offerings. Exhibit 2, ¶ 53; Exhibit 4. The structure of their operations facilitates consolidated sourcing and coordinated distribution to U.S. consumers. *Id.* ¶ 54.

### III. Argument

#### A. Applicable Legal Standards

Courts may enjoin trademark infringement and counterfeiting. *See Columbia Pictures Indus. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996). Courts in this District apply the same standard to temporary restraining orders and preliminary injunctions. *See, e.g., Mays v. Dart,* 453 F. Supp. 3d 1074, 1087 (N.D. Ill. 2020); *Long v. Bd. Of Educ., Dist.,* 128, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001). In considering whether to grant a temporary restraining order, a Court considers four factors:

(1) likelihood of success on the merits;
(2) irreparable harm without relief;
(3) balance of hardships favoring the movant; and
(4) public interest supporting the injunction.

*See Titan Tire Corp. v. Case New Holland*, 566 F.3d 1372, 1375–76 (Fed. Cir. 2009); *see also Abbott Labs,* 500 F. Supp. 2d at 815-16. The more likely a plaintiff will succeed on the merits, the less the harm balancing needs to favor plaintiff. *EnVerve, Inc. v. Unger Meat Co.,* 779 F. Supp. 2d 840, 843 (N.D. Ill. 2011).

##### 1. Lanham Act Standards

These Defendants are infringing Plaintiff's EVERSNUG and [briefcase logo] marks. The Lanham Act imposes liability on anyone who, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods...

3

which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1).

Unfair competition requires two showings. First, the mark must have Lanham Act protection. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000); *See* 15 U.S.C. § 1125(a). Second, the challenged mark must create likelihood of confusion. *Id.*

    2.    Standards on Remaining Factors

Irreparable harm means injury that money damages cannot cure. *See H-D, USA, LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-C-3581, 2021 U.S. Dist. LEXIS 187253, at *10 (N.D. Ill. Sept. 24, 2021) (*citing Kraft Foods Brands LLC v. Cracker Barrel Old Country Stores, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013)). Lost customers, market share, goodwill, price erosion, and reputation establish irreparable harm when damages cannot be calculated precisely. *See e.g., Life Spine v. Aegis Spine, Inc.*, 8 F.4th 531, 545–45 (7th Cir. 2021); *Henkel Corp. v. Coral, Inc.*, 754 F. Supp. 1280, 1308–09 (N.D. Ill. 1991), Congress has reimposed the presumption of irreparable harm in trademark infringement cases with the Trademark Modernization Act. 15 U.S.C. 34(a).

The balance of hardships weighs potential harm to the defendant against harm to the plaintiff if relief is denied. *See Ty v. Jones Grp.*, 237 F.3d 891, 895 (7th Cir. 2001).

    B.    <u>This Court has Personal Jurisdiction over the Defendants</u>

The Defendants, here, offer for sale, sell, import, or some combination of the same, infringing products into this District. Courts routinely exercise jurisdiction over websites targeting Illinois. Establishing an online store on a platform, like that here, and stating a willingness to ship goods to Illinois is sufficient to show purposeful availment

and submission to personal jurisdiction. *NBA Props. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022). By "structure[ing] its sales activity in such a manner as to invite orders from Illinois and develop[ing] the capacity to fill them," the Defendants submitted to the Court's jurisdiction. *Id*. And as to any alleged unfairness, it is not unfair to cause a Defendant shipping infringing goods to "defend a lawsuit in the courts of the state where, through the very activity giving rise to the suit, it continues to gain so much." *Id*. at 627 (quoting *uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 423 (7th Cir. 2010)).

C. Plaintiff Is Likely to Succeed on the Merits

Both EVERSNUG and  are registered with the USPTO. Exhibits 1 and 2. The registrations are valid and in full force and effect. Plaintiff did not authorize, license, or otherwise acquiesce to Defendants' use of these marks. Thus, the first element is satisfied.

As for the second, likelihood of confusion, counterfeiters trigger a presumption of confusion. Defendants 2 and 3 are counterfeiters. For Defendant two, (Exhibit 3, p. 36) is exactly . Defendant 3 offers a counterfeit of the logo mark (*Id.*, p. 46) as well as the EVERSNUG mark, (*Id.*, p. 45). Defendants 2 and 3, "attempt[ing] to capitalize upon the popularity of another's product," requires this court to presume confusion. *Entm't One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 949 (N.D. Ill. 2019) (quoting *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007)).

5

Otherwise, for infringement, courts in this Circuit apply a seven factor test, considering: (1) similarity between marks; (2) similarity of products; (3) area and manner of use; (4) consumer care level; (5) mark strength; (6) actual confusion; and (7) intent to deceive. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). Three factors matter most: mark similarity, actual confusion, and defendant intent. *Id.*

The evidence is overwhelming. Defendant 1 sells products identical with Plaintiff's genuine goods using a mark incredibly similar to [mark]. The infringing mark also has a plane; Also superimposed on a briefcase; Also with a gust of air. Exhibit 3, pp. 30-31. The minor variation of a small semi-circle at the bottom does little to quell confusion when products are exactly the same, the channels of trade are identical (ecommerce), and the products are low cost on a race-to-the-bottom platform like Temu. Exhibit 3, ¶ 12. This shows Defendants' intent to "palm off" counterfeits as genuine products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001).

D. <u>Plaintiff Will Suffer Immediate and Irreparable Harm Without Injunctive Relief</u>

As for the second element of the analysis, the Court must determine whether Plaintiff will suffer irreparable harm absent the requested relief. The Trademark Modernization Act of 2020 restored the pre-2006 presumption of irreparable harm in trademark cases. 15 U.S.C. § 34(a) (restoring the presumption of irreparable harm that had been eliminated in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)). So, irreparable harm is established here.

E.  An Asset Restraint Is Necessary to Prevent Irreparable Harm and Preserve This Court's Ability to Provide Relief

"[D]istrict courts often agree[] that it is necessary to restrain the defendants' assets without notice in order to prevent them from removing their assets from the United States or otherwise hiding them." *Square One Entm't Inc.,* 2021 U.S. Dist. LEXIS 65710, at \*2; *See, also, In re Uranium Antitrust Litig.,* 617 F.2d 1248, 1259 (7th Cir. 1980) (determining federal courts can restrain removal of assets from U.S.). Even so, district courts generally lack the ability to restrain assets when a plaintiff seeks a money judgment. *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 U.S. Dist. LEXIS 205985, \*2 (N.D. Ill. Oct. 31, 2013). There is, however, an exception where plaintiffs seek an equitable remedy, including disgorgement of profits. *Id.*; *CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 996 (7th Cir. 2002). Here, Plaintiff seeks disgorgement of profits under 15 U.S.C. § 1117.

These Defendants have all reported to the platform they are on that they are located in China. Plaintiff has already excluded U.S.-based infringers from this suit. While assets are presently within reach of this Court, if Defendants can transfer them to offshore bank accounts, especially Chinese ones, the Court will have no ability to effectuate the relief sought. Irreparable harm exists where damages are inadequate and a damages award is inadequate if they are "unobtainable from the defendant." *Roland Machinery Co.,* 749 F.2d at 386.

These sorts of factors and the situation at hand, like a degree of anonymity afforded by platforms and lack of readily apparent domestic assets, have been significant in determining irreparable harm to intellectual property owners. *See Peng v. Partnerships*, No. 21-cv-1344, 2021 U.S. Dist. LEXIS 174254, at \*7-8 (N.D. Ill. Sept. 14,

7

2021) (citing *Robert Bosch LLC*, 659 F.3d at 1155-56). If these Defendants even learn about this case before interim relief is entered, they are likely to make meaningful recovery impossible. *See, e.g., Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263 (D. Kan. 2009) (finding the ability to collect from foreign defendants with few to no assets in the U.S. favors a finding of irreparable harm).

These courts, and others in this District, routinely grant temporary restraining orders in similar situations. *See, e.g., Deckers Outdoor Corp.,* 2013 U.S. Dist. LEXIS 205985, *2.; *PINK FLOYD (1987) Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, Civil Action No. 1:21-cv-04406, 2021 U.S. Dist. LEXIS 254393 (N.D. Ill. Oct. 21, 2021). The same facts and considerations apply here. As such, an asset restraint is imminently appropriate.

That said, Plaintiff is not blind to the possibility of an overbroad or indiscriminate asset restraints. So, Plaintiff is committed to reviewing information from the platforms as to sales of infringing goods and adjusting the amount of any asset restraint at the time it moves for a preliminary injunction. Plaintiff will adjust sought asset restraint at the preliminary injunction stage to correspond to available damage models, i.e*.,* $1,000-$200,000 per counterfeit mark, disgorgement of profits, actual damages, costs, and so on, multiplied for willfulness.

F.     The Balance of Harms Favors Plaintiff

Any harm Defendants suffer flows from their own infringement. *See Bulgari S.P.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 14-cv-4819, 2014 U.S. Dist. LEXIS 107218, at *21 (N.D. Ill. July 18, 2014). Courts do not and should not credit self-inflicted wounds.

8

  G. <u>A TRO Will Not Harm the Public</u>

The question is truly "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1998). The entire purpose of trademark protection is to prevent consumer confusion. The public is best served by not being confused. Moreover, courts favor trademark owners when weighing hardships. *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). Infringers assume their own risk. *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992); *see also Ty, Inc. v. Jones Grp.*, 237 F.3d 891, 903 (7th Cir. 2001) (recognizing that in weighing balancing of harms, "the court excludes the burden [the defendants] voluntarily assumed by proceeding in the face of a known risk"). A TRO benefits the public.

  H. <u>The Ex Parte Relief Is Necessary</u>

Cases against infringers of infringing goods "are often useless if notice is given to the infringers." *Columbia Pictures Indus. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996). Courts routinely provide ex parte relieve in Schedule A cases like this one. The same reasons apply here. With notice, Defendants are likely to remove assets from the U.S. or hide them. *Sauare One Ent. Inc.*, 2021 U.S. Dist. LEXIS 65710, at *2.

  I. <u>Plaintiff is Entitled to Expedited Discovery</u>

Federal courts possess inherent power to order discovery of facts necessary to find out their competency to entertain the merits. *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Courts exercise wide latitude in granting discovery requests. *Id.* (citation omitted). They may permit discovery to identify unknown defendants. See Fed. R. Civ. P. 26(b)(2).

9

Without expedited discovery, Plaintiff cannot get any meaningful relief. Here, Plaintiff seeks information sufficient to confirm the identities and locations of Defendants, if the Defendants provided inaccurate information to the platforms. And Plaintiff also seeks expedited discovery of Defendants' bank and payment accounts to effectuate asset restraints. This is well withing the Court's broad discretionary power over discovery. *See* Fed R. Civ. P. 26(b)(2). Otherwise Defendants can simply move funds beyond reach. Expedited discovery prevents this evasion.

Courts in this District consider expedited discovery requests based on the record and the reasonableness of the request. Reasonableness is connected to whether a preliminary injunction is pending, the breadth of the request, the timing, and the burden on the defendant. *Ibarra v. City of Chicago,* 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011). This request is prompt. It is not burdensome on Defendants, at all. And it is narrowly tailored to what is necessary to effectuate relief in this case.

J.   A Bond Should Be Set at $3,000 to Secure the Injunctive Relief

The amount of a bond upon issuing a TRO or preliminary injunction is committed to the Court's sound discretion. *Gateway E. Ry. Co. v. Terminal R.R. Ass'n*, 35 F.3d 1134, 1141 (7th Cir. 1994). Strong evidence of infringement justifies minimal security, here. So, Plaintiff requests a bond not exceeding $1,000 per Defendant, or $3,000.00. Courts have set bonds at $10,000 for hundreds of defendants. This case is only three, with overwhelming evidence of infringement.

## IV.   Conclusion

Defendant's unlawful operations, directly competing with Plaintiff on the same platforms as the Defendants are using Plaintiff's own marks on infringing goods, are

10

irreparably harming Plaintiff. In view of these facts, and consistent with similar cases, Plaintiff requests this Court enter a temporary restraining order.

                                          Respectfully submitted,
                                          Kuiper Ventures LLC, by

                                          s/ Jonathan L.A. Phillips
                                          Jonathan L.A. Phillips (IL6302752)
                                          **Phillips & Bathke, P.C.**
                                          300 Northeast Perry Avenue
                                          Peoria, Illinois 61603
                                          (309) 834-2296
                                          jlap@pb-iplaw.com